Otto W. SCHALOW, Zoning Administrator of Crow Wing County, et al., Appellants,

v.

Donald D. MASON et al., Respondents.

No. CX–83–1915.

Court of Appeals of Minnesota.

Nov. 6, 1984.

Stephen C. Rathke, Crow Wing County Atty., Brainerd, appellants.

Donald D. Mason, pro se.

Considered and decided by POPOVICH, C.J., and SEDGWICK and LANSING, JJ., with oral argument waived.

### OPINION

LANSING, Judge.

Otto W. Schalow, zoning administrator of Crow Wing County, and the County of Crow Wing appeal from a judgment that a

cabin located on North Long Lake is in compliance with Crow Wing County zoning ordinance setback requirements. They contend that the trial court's placement of the ordinary high water mark from which a setback is measured was clearly erroneous. We remand.

## FACTS

Donald and Alice Mason own a lot on North Long Lake. Donald Mason applied for and was issued a permit to construct a 36 by 26 foot family dwelling on the lakeshore 75 feet from the normal high water mark. Mason placed pilings on the property and then sought a variance that would allow him to move the building site 75 feet toward the lake. The request for a variance was denied.

The following spring Mason contacted Otto Schalow, zoning administrator of Crow Wing County. Schalow agreed to ascertain the normal high water mark on the Mason property.

Three years earlier the Minnesota Department of Natural Resources (DNR), using landscape evidence, old field notes, and maps, determined the natural ordinary high water mark of North Long Lake to be 1,198.6 feet above sea level. A 1978 topographical map showed the 1,198-foot and the 1,199-foot elevations for the Mason property.

On June 4, 1980, Schalow, Ronald Morreim, and Lee Anderson went to the Mason property and ascertained the normal high water mark. Morreim is an area hydrologist employed by the Brainerd office of the DNR, Division of Waters. Morreim used the previously determined ordinary high water elevation of 1,198.6 feet to place the mark on the Mason property. Schalow measured the distance between the mark and the pilings on Mason's property and found the distance less than the required 75-foot setback. Schalow informed Mason by letter that "your pilings are closer than 75 feet to the normal high water line of North Long Lake except the back ones, which are about on the 75′ mark."

Approximately a year and a half later Mason told Schalow that he was going to build on the pilings. Schalow informed Mason that this would violate the zoning ordinance and would have to be turned over to the county attorney. One month later Mason began building. A photograph of the structure on the pilings shows that there are less than 50 feet between the lakeside edge of the cabin and the normal high water mark as set by the DNR.

During the court trial, the judge viewed the property and concluded that the cabin was in compliance with the setback requirements but a proposed deck would violate the ordinance. The court determined the normal high water mark by viewing the intermixing of aquatic and land vegetation, noting that the "point where the transition occurs upon which measurement should be based is a judgment call peculiar to the circumstances of each unique parcel of property."

## ISSUE

Was the court's placement of the normal high water mark clearly erroneous?

## ANALYSIS

Each county must have a shoreland conservation ordinance that meets the minimum standards established by Minn.Stat. § 105.485, subd. 3 (1982). *See id.* subd. 6. Minnesota Rule 6120.1400, sub. 3 (1983), provides one of the minimum standards, requiring all structures except boat houses, piers, and docks on a general development lake to be set back at least 75 feet from the normal high water mark.

Crow Wing County classifies North Long Lake as a general development lake, Crow Wing County, Minnesota, Ordinance § 5.4–19–8–3, and requires all structures on North Long Lake to be set back at least 75 feet from the normal high water mark. *Id.* § 5.4–10–5.1.

The ordinary or normal high water mark is defined by Minn.Stat. § 105.37, subd. 16 (1982):

"Ordinary high water level" means the boundary of public waters and wetlands, and shall be *an elevation* delineating the highest water level which has been maintained for a sufficient period of time to leave evidence upon the landscape, commonly that point where the natural vegetation changes from predominantly aquatic to predominantly terrestrial.

(Emphasis added). The definition of normal high water mark adopted by Crow Wing County conforms with Minnesota's statutory definition, as does the definition promulgated by the Department of Natural Resources. *See* Crow Wing Co. Ord. § 2.1–49; Minn.Rule 6120.0100, subp. 6 (1983).

The trial court concluded that the Masons' cabin complied with the Crow Wing County setback requirements, but that the proposed deck would violate the setback requirements. To draw such conclusions, the court must have ascertained an ordinary high water level and measured from that point. Indeed, in its memorandum the court acknowledged that the gist of the suit was the factual determination of a high water level point from which a measurement should be made. The court stated that it established such a point but did not state what the point was in either its findings or its memorandum.

■ Because the ordinary high water level used by the court is not stated, we cannot determine whether the trial court's factual finding is reasonably supported by the evidence. The ordinary high water level is the boundary of public waters. Minn. Stat. § 105.37, subd. 16. Because a boundary is being determined, the findings must be specific. In addition, Minnesota requires that ordinary high water levels be stated in terms of elevation. *See id.* Because the trial court did not find a specific ordinary high water level stated in terms of elevation, we remand for such a finding and for conclusions based on that finding. We would note, however, that for most Minnesota lakes, the ordinary high water level will be uniform around the whole lake and will not vary from parcel to parcel.

Therefore, it is appropriate to use evidence from other parcels, as well as Mason's, in determining the lake's ordinary high water mark.

## DECISION

We remand to the trial court for a finding of the ordinary high water level and for conclusions based on that finding.

Remanded.